[Cite as *State v. Freeman*, 2017-Ohio-1281.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104711**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# MAURICE FREEMAN

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-01-410924-ZA

**BEFORE:** Kilbane, P.J., E.T. Gallagher, J., and Jones, J.

**RELEASED AND JOURNALIZED:** April 6, 2017

**FOR APPELLANT**

Maurice Freeman, pro se
Inmate No. 431-957
North Central Correctional Complex
P.O. Box 1812
Marion, Ohio 43301


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
Brett Hammond
Assistant County Prosecutor
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

{¶1} Defendant-appellant, Maurice Freeman ("Freeman"), pro se, appeals from the denial of his motion to withdraw waiver of jury trial. For the reasons set forth below, we affirm.

{¶2} The facts of this appeal were previously set forth by this court in Freeman's prior appeal, *State v. Freeman*, 8th Dist. Cuyahoga No. 80720, 2002-Ohio-4572.

> [I]n the early morning hours of July 25, 2001[, at] approximately 3:30 a.m., Freeman presented himself at the home of his seventeen-year old friend, Lekeia Staples. [Freeman asked to use her phone.]
>
> * * *
>
> Lekeia's grandmother still was entertaining a number of friends; therefore, Freeman's request to use Lekeia's telephone created no difficulties. Lekeia retrieved the cordless telephone while Freeman waited on the downstairs porch. She then stood by as Freeman made his call._
>
> A few moments later, Lekeia saw an automobile traveling on East 115th Street. Just as the vehicle turned onto Beulah Avenue, Freeman called out loudly the name "Thurl." Lekeia knew the name; Thurlon Hill had been a friend of hers and Freeman's for over ten years. At the sound of Freeman's voice, the automobile halted its progress and reversed its direction. Freeman handed Lekeia the telephone and walked over to the automobile. The passenger door opened, thus permitting Freeman access to the rear passenger seat. Once Freeman was inside, the vehicle continued on its way. Lekeia returned to the second-floor unit._
>
> The vehicle belonged to the victim, Alphonso Amos. With him, seated in the front passenger seat, was Thurlon Hill. Freeman was inside the vehicle only a short time before_Hill heard a shot fired. At Freeman's trial, Hill testified he turned toward the sound to see Freeman "pulling the gun back." Amos was frantically "grabbing" at Freeman's hands in an attempt to snatch the weapon away. With the driver's attention thus diverted, Amos' vehicle struck a utility pole and stopped._

Amos at that time abandoned both his attempt to disarm Freeman and his automobile. He exited the vehicle and proceeded to run down East 115th Street. He was bleeding onto the pavement as he ran. Amos traveled only a short distance before collapsing onto the sidewalk._

The sound of the weapon's discharge drew the attention of people in the vicinity. John Bland, who had been in the process of leaving Lekeia's grandmother's residence, had reached the driveway when he saw Amos' vehicle strike the utility pole. Bland continued to watch; he saw the driver leap out, run a short distance, and then fall. After Amos dropped to the sidewalk, Bland saw the vehicle travel in reverse away from the pole, hesitate briefly, and slowly proceed on the street toward him. When the vehicle was next to the victim where he lay, Bland heard another gunshot. The vehicle then was driven away._

The gunfire had prompted one of the neighbors to telephone emergency services; therefore, members of the Cleveland Police Department arrived within minutes. One of the officers, John Douglas, saw that the victim was bleeding from at least two wounds._

Amos initially could not answer Douglas' partner as she attempted to pose questions because he was "screaming" and writhing in pain. However, as additional officers arrived, Amos seemed to understand they needed information. Thus, when Kevin Freese asked Amos if "he knew who shot him," Amos eventually managed to respond, stating, "Maurice Freeman." Douglas also heard Amos' response._

Although Amos was transported to the hospital, efforts to save his life proved fruitless.

* * *

Amos' statement naming his assailant, together with other witness statements, led to Freeman's eventual arrest and indictment. The indictment, as amended just prior to Freeman's trial, charged him on three counts as follows: aggravated murder, R.C. 2903.01(A), with two firearm specifications (murder with prior calculation and design); aggravated robbery, R.C. 2911.01, with two firearm specifications; and having a weapon while under disability, R.C. 2923.13._

Freeman elected to have the final count [having a weapon while under disability] tried to the bench; therefore, his case proceeded to a jury trial on the first two counts.

\* \* \*

The jury ultimately found Freeman guilty of aggravated murder with firearm specifications and not guilty of aggravated robbery. After the trial court found Freeman guilty of the remaining count, it sentenced Freeman to concurrent terms of incarceration of three years on the firearm specifications, twenty years to life on the aggravated murder charge, and one year on the weapon charge.

*Id.* at ¶ 3-11, 13-15.

{¶3} In April 2016, Freeman moved to withdraw his jury trial waiver and requested to be tried to a jury, arguing he was never tried or convicted on the having weapons while under disability count. The state opposed, and the trial court denied his motion.

{¶4} It is from this order that Freeman appeals, raising the following two errors for review.

### Assignment of Error One

The trial court erred to the prejudice of [Freeman] when it simply denied [his] motion for proposed statement pursuant to [App.R. 9(C)] with request for evidentiary hearing so the facts may be fully developed upon the record.

### Assignment of Error Two

The clerk of courts failed to produce and transfer the original verdict forms before the appellate court per court order and for purpose of appellate review pursuant to App.R. 9(C) to which requires only the original documents.

{¶5} Within these assigned errors, Freeman argues that the trial court erred in failing to issue an App.R. 9(C) statement of the proceedings, and the clerk of courts failed to transfer the original verdict forms to this court for appellate review. While this appeal was pending, Freeman filed motions requesting the transmission of the trial transcript and original verdict forms to this court. The original trial transcript has been filed and is in the record. Although the clerk of courts was unable to locate the original verdict forms, the clerk has since filed certified copies of the original verdict forms that are now part of the record in this case. Therefore, Freeman's assigned errors are moot.

{¶6} Moreover, Freeman's argument that the trial court never issued a ruling on the having a weapon while under disability charge is not supported by the record. After the jury found Freeman guilty of aggravated murder and not guilty of aggravated robbery, the following exchange took place on the record:

[THE STATE]: Your Honor, there's the issue of the weapon while under disability.

THE COURT: Yes. With respect to Count 4, that case was tried to myself, having the weapon under disability count, and I, in fact, find the defendant guilty of that charge. He will be sentenced on that case as well.

{¶7} In a nunc pro tunc journal entry, dated April 3, 2012, the court corrected its previously entered judgment regarding Freeman's conviction and sentence. The court stated, in relevant part:

Nunc pro tunc entry as of and for 12/27/2001. * * * On a former day of court a jury returned a verdict of guilty of aggravated murder with firearm specification * * * as charged in Count 1, and having a weapon while under disability * * * as charged in re-numbered Count 3 originally Count 4 of the indictment. * * * The court imposes a prison term at Lorain Correctional Institution of 3 years as to gun specification to be served prior to and consecutive to base charge of 20 years to life as to Count 1 and 1 year as to re-numbered Count 3 formerly Count 4, Count 3 to run concurrent with Count 1.

{¶8}   Based on the foregoing, we find Freeman's arguments unpersuasive.

{¶9} The first and second assignments of error are overruled.

{¶10} Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
LARRY A. JONES, SR., J., CONCUR